**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

MICHAEL G. LASSIG,

                        **Plaintiff,**

  vs.                                                                **1:15-CV-885
                                                                        (MAD/CFH)**

**WILLIAM J. WOODWARD,**

                        **Defendant.**
_____

APPEARANCES:                                    OF COUNSEL:

**BLUSTEIN, SHAPIRO LAW FIRM**          **GARDINER S. BARONE, ESQ.**
10 Matthews Street
Goshen, New York 10924
Attorneys for Plaintiff

**GOLDBERG, SEGALLA LAW FIRM**      **WILLIAM J. GREAGAN, ESQ.**
8 Southwoods Boulevard - Suite 300
Albany, New York 12211
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

     On September 21, 2015, Plaintiff Michael G. Lassig commenced this action against Defendant William J. Woodward alleging violations of the New York Labor Law arising from an injury Plaintiff suffered while working in a warehouse owned by Defendant. *See* Dkt. No. 1. Plaintiff asserts subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). *See id.* at ¶¶ 1-5. Presently before the Court are Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment. *See* Dkt. Nos. 17, 18. For the following reasons, Defendant's motion is granted, and Plaintiff's motion is denied.

## II. BACKGROUND

On January 28, 2013, Plaintiff was working for Cigar Box Studios, Inc. ("Cigar Box"), which was in the business of creating commercial displays and sets for theatrical productions. *See* Dkt. No. 17-3 at ¶¶ 3, 9. At the time, Cigar Box had recently leased a portion of a warehouse in Marlboro, New York, and the company was in the process of moving into the new space. *See* Dkt. No. 18-13 at ¶ 3; Dkt. No. 17-3 at ¶ 4. The warehouse in Marlboro was owned by Defendant at all times relevant to this proceeding. *See* Dkt. No. 17-3 at ¶ 1.

As part of the move to Marlboro, Cigar Box made a series of changes to the warehouse space, including the construction of two interior rooms; it also upgraded the electrical service, added new lighting and piping, and installed a floating plywood floor. *See* Dkt. No. 17-3 at ¶ 8; Dkt. No. 21-12 at ¶ 8. While the majority of that work was done by outside contractors, Cigar Box employees were responsible for installing the floating floor. *See* Dkt. No. 21-12 at ¶ 8. Cigar Box rented a forklift and other machinary in order to install the floating floor, which consisted of multiple layers of plywood that were screwed together and laid on top of the existing concrete floor. *See* Dkt. No. 17-3 at ¶ 14; Dkt. No. 18-7 at 65:14; Dkt. No. 18-13 at ¶ 21. The floating floor would eventually cover the vast majority of Cigar Box's Marlboro warehouse space, but the floor was only approximately half complete as of January 28, 2013. *See* Dkt. No. 18-7 at 54:21.

Plaintiff was a warehouse worker, which meant that he was regularly asked to move equipment and place equipment in storage for Cigar Box. *See* Dkt. No. 18-13 at ¶ 6. On January 28, 2013, Plaintiff was part of a team of workers that were assigned to move metal racking to Marlboro from a separate Cigar Box location in Newburgh, New York. *See* Dkt. No. 18-13 at ¶ 9. The racking was made of interconnected steel arms that were three to four feet long and

2

weighed twenty-five to thirty-five pounds. *See* Dkt. No. 17-3 at ¶ 19. When assembled, it functioned as shelving for heavy objects such as lumber and piping. *See id.* at ¶ 20.

Upon arriving in Marlboro, Plaintiff and other workers were told to unload the pieces of shelving and store them on top of an interior room of the warehouse. *See id.* at ¶ 22. The ceiling of the warehouse ranged from sixteen feet to twenty-one feet at its highest point, and the top of the interior room was approximately ten feet high. *See id.* at ¶¶ 9-10. The workers used a forklift to transport the disassembled shelving from a box truck to the top of one of the interior rooms. *See id.* at ¶ 14. Once the forklift reached the interior room, Jonathan Edwards, a Cigar Box employee, stood on the blades of the forklift as they were raised to the top of the interior room. *See id.* at ¶¶ 26-27. Edwards stood on the forklift blades in order to steady the load and, once the blades reached the appropriate height, to unload the pieces of shelving. *See id.* Edwards then instructed Plaintiff to do the same with a subsequent load, and no Cigar Box employee that was present advised against Plaintiff's actions. *See id.* at ¶¶ 28-29. Plaintiff stood on the blades as they were raised to approximately ten feet in the air, and the forklift then began moving forward, at which point Plaintiff fell onto the concrete floor and suffered serious injuries. *See id.* at ¶¶ 32-34.

On July 21, 2015, Plaintiff filed the complaint in this action, alleging that his injury was the result of violations of the New York Labor Law. Defendant answered and, on February 17, 2017, filed his summary judgment motion seeking to have Plaintiff's complaint dismissed in its entirety. *See* Dkt. Nos. 6, 18. On that same day, Plaintiff filed his own motion, which seeks summary judgment only on the issue of liability. *See* Dkt. No. 17-4 at 6.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[S]ummary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment. Summary judgment may also be granted against any part of the remedy sought by the opposing party's claims. *See Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 307 (E.D.N.Y. 2010).

4

**B.     Defendant's Motion**

In Plaintiff's complaint, he claims that Defendant violated sections 240(1) and 241(6) of the New York Labor Law.  *See* Dkt. No. 1 at ¶¶ 18, 38.  Defendant moves for summary judgment on both claims.

### *1. Labor Law 240(1)*

New York Labor Law section 240(1), also known as the "scaffold law," provides that

> All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

"The statute imposes absolute liability on building owners and contractors whose failure to 'provide proper protection to workers employed on a construction site' proximately causes injury to a worker."  *Wilinski v. 334 E. 92nd Hous. Dev. Fund Corp.*, 18 N.Y.3d 1, 7 (2011) (quoting *Misseritti v. Mark IV Const. Co., Inc.*, 86 N.Y.2d 487, 490 (1995)).

"The duty imposed by Labor Law § 240(1) is non-delegable; the contractor and owner may be held liable even if they did not exercise supervision or control over the plaintiff's work." *Dwyer v. Goldman Sachs Headquarters LLC*, 819 F. Supp. 2d 320, 326 (S.D.N.Y. 2011). Additionally, "once a Labor Law § 240(1) violation and proximate cause are established, a defendant cannot raise an injured employee's contributory negligence as a defense." *Barreto v. Metropolitan Transp. Auth.*, 25 N.Y.3d 426, 436 (2015).  The purpose of the statute is to protect workers "by placing ultimate responsibility for safety practices on owners and contractors, rather than on the workers, who as a practical matter lack the means of protecting themselves from accidents." *Martinez v. City of New York*, 93 N.Y.2d 322, 325 (1999) (citations omitted).  For

5

that reason, courts have regularly noted that section 240(1) should be "construed as liberally as may be for the accomplishment of the purpose for which it was . . . framed." *Id.* (alteration in the original) (quoting *Quigley v. Thatcher*, 207 N.Y. 66, 68 (1912)). At the same time, "the statutory language must not be strained in order to encompass what the Legislature did not intend to include." *Id.* (quoting *Martinez v. New York City*, 252 A.D.2d 545, 546 (1998)).

Defendant's motion for summary judgment argues that Plaintiff's section 240(1) claim must fail because he was not engaged in a statutorily protected activity at the time of his accident. *See* Dkt. No. 18-12 at 3. In particular, Defendant argues that Plaintiff was not engaged in the "the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure," as required by section 240(1). *See id.* In opposition, Plaintiff provides two different theories for why his activities should be covered under section 240(1). First, Plaintiff argues that the installation of the floating floor constituted an alteration of a structure under section 240(1), and that moving the shelving is covered under section 240(1) because it was ancillary to the installation of the floor. *See id.* at 8. Second, Plaintiff argues that the act of transporting and storing the industrial shelving was itself an "alteration of a structure" and thus was covered under section 240(1). *See* Dkt. No. 20-2 at 3.

*a. The Floating Floor*

There are two questions that must be addressed in order to decide whether Plaintiff's work is covered under section 240(1) because of its relationship to the installation of the floating floor. First, the Court must determine whether the installation of a floating floor in the warehouse actually constituted an alteration to the warehouse. Second, even if the installation of the floating floor was an alteration covered by section 240(1), the Court must also determine whether Plaintiff's role in moving the shelving was sufficiently connected to the installation of the floor to

6

bring his work within the scope of section 240(1). If the floor installation was not an alteration of a structure, or if Plaintiff's work was not sufficiently related to that alteration, then Plaintiff's injury is not covered under section 240(1).

First, in order for work to be considered an "alteration" under section 240(1), the work must constitute "a *significant* physical change to the configuration or composition of the building or structure." *Joblon v. Solow*, 91 N.Y.2d 457, 465 (1998). By contrast, "routine maintenance . . . fall[s] outside the reach of the statute." *Id.*; *compare Esposito v. N.Y.C. Indus. Dev. Agency*, 1 N.Y.3d 526, 528 (2003) (holding that a worker was not covered by section 240(1) where he was injured while replacing air conditioning components that were damaged as a result of normal wear), *with Sanatass v. Consol. Investing Co., Inc.*, 10 N.Y.3d 333, 338 (2008) (holding that a worker was covered by section 240(1) where he was injured while installing large air conditioning ducts by affixing metal rods into a ceiling).

Courts also look to whether an alteration is functional or merely decorative. *Joblon*, 91 N.Y.2d at 465. For example, multiple courts have found that replacing or hanging wallpaper is not covered by section 240(1) because it is decorative and more akin to routine maintenance than a significant alteration to a structure. *See Simon v. Granite Bldg. 2, LLC*, 114 A.D.3d 749, 753 (2d Dep't 2014) ("Wallpapering in and of itself is not an enumerated activity under the Labor Law . . . ."); *accord Schroeder v. Kalenak Painting & Paperhanging, Inc.*, 7 N.Y.3d 797, 798 (2006). Conversely, the New York Court of Appeals held that applying a bomb blast film to a building's lobby windows qualified as a significant alteration because it was functional and changed the composition of the windows and the way that they "react to explosions, impacts and the elements." *Belding v. Verizon N.Y., Inc.*, 14 N.Y.3d 751, 752-53 (2010). Moreover, the court noted that application of bomb blast was a one-time security enhancement; the replacement of

7

wallpaper, on the other hand, is a more frequent change with less structural effect. *See id.* Similarly, in *Samuel v. Simone Dev. Co.*, 13 A.D.3d 112 (1st Dep't 2004), the plaintiff was injured while installing carpeting to soundproof the walls of a recording studio. The court found that he was engaged in the alteration of a structure because his work was for the purpose of soundproofing, "rather than for mere cosmetic purposes." *Id.* at 113.

Here, the installation of the floating floor seems more similar to the application of bomb blast film to windows or carpeting in a recording studio than it is to the replacement of wallpaper. The plywood changes the composition of the floor and how it responds to the demands of carpentry and set design work. Indeed, the president of Cigar Box stated at his deposition that he added the floating floor because "working on concrete all day is terrible." Dkt. No. 18-7 at 21:22-22:2. Additionally, the floor installation was a big job; it took place over the course of multiple weeks and required a variety of tools, including a portable generator, a fork lift, screw guns, and different types of saws. *See id.* at 33:11-33:25. Therefore, the installation of the floating floor was likely an alteration of a structure for the purposes of section 240(1). However, the Court need not reach that question because Plaintiff was not sufficiently involved in the installation of the floor to be covered under section 240(1).

The particular task performed by a plaintiff need not constitute a protected activity under section 240(1) (*i.e.*, the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure), "so long as the task is sufficiently connected to a larger project that qualifies." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 44 F. Supp. 3d 409, 437 (S.D.N.Y. 2014) (citing *Prats v. Port Auth. of N.Y. & N.J.*, 100 N.Y.2d 878, 882 (2003)). There is no clear test for whether a particular task is "sufficiently connected"; instead, courts must make

8

that determination "on a case-by-base basis, depending on the context of the work." *Prats*, 100 N.Y.2d at 883.[1]

There is no agreed upon list of factors that courts should consider in determining the scope of protected activity under section 240(1), but one statement is widely cited to guide the inquiry: "The intent of the statute was to protect workers employed in the enumerated acts, even while performing duties ancillary to those acts." *Prats*, 100 N.Y.2d at 882. The questions, then, are (1) whether a plaintiff was employed in an enumerated act, and (2) whether that plaintiff was performing duties ancillary to an enumerated act.[2] In this case, the answer to both questions is no.

First, Plaintiff was not employed in an enumerated act. Plaintiff was employed as a warehouse worker whose daily job responsibilities consisted of "moving equipment as needed, and placing equipment in storage." Dkt. No. 18-13 at ¶ 6. Nothing in Plaintiff's job title indicates that he was employed in an enumerated act. While a plaintiff's job title is a factor worthy of consideration, the Court of Appeals has held that "job titles are not dispositive," and that courts should also look at whether a plaintiff "undertook the kind of work the Legislature intended to protect under section 240(1)." *Prats*, 100 N.Y.2d at 882; *see also Aguilar v. Henry Marine Serv.,*

---

[1] In *Martinez v. City of New York*, 93 N.Y.2d 322, 326 (1999), the Court of Appeals articulated and rejected one potential standard: whether a plaintiff's work is "integral and necessary" to a larger project that is within the purview of section 240(1). The court held that that test "improperly enlarges the reach of the statute beyond its clear terms." *Id.* But even under that overly broad standard, Plaintiff's claim still fails. Transporting shelving from Newburgh to Marlboro was part of the larger process of moving Cigar Box's operations to Marlboro, but it was not "integral and necessary" to the installation of the floor.

[2] This inquiry is relevant only if a plaintiff was not engaged in a protected activity (*i.e.*, the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure) at the time of his injury. If a plaintiff was engaged in a protected activity, then it does not matter whether he was employed in an enumerated act. *See Joblon*, 91 N.Y.2d at 465 ("It is not important how the parties generally characterize the injured worker's role but rather what type of work the plaintiff was performing at the time of injury.").

9

*Inc.*, 12 A.D.3d 542, 544 (2d Dep't 2004) (alteration in original) ("Even assuming that the plaintiff was not a welder, but merely a laborer, the facts establish that '[plaintiff] was a member of a team that undertook an enumerated activity under a construction contract . . . .'") (quoting *Prats*, 100 N.Y.2d at 882). In this case, the workers at Cigar Box were divided into two different crews: a "warehouse crew" that focused on loading, unloading, and moving Cigar Box products, *see* Dkt. No. 18-7 at 9:11-9:18, and a "production crew" that included carpenters, welders, and metal workers, *see* Dkt. No. 18-8 at 10:11-10:16. Plaintiff was part of the warehouse crew. *See* Dkt. No. 18-7 at 9:11-9:18. He did not participate in the renovation of the Marlboro facility in general, or in the installation of the floating floor in particular. *See id.* at 67:5-67:7.

Second, Plaintiff was not performing duties ancillary to an enumerated act. Although the definition of "ancillary" work remains somewhat murky, a recent Court of Appeals decision suggests that it should include "work essential to the enumerated act." *Saint v. Syracuse Supply Co.*, 25 N.Y.3d 117, 125 (2015). For example, in *Goodwin v. Dix Hills Jewish Center*, 144 A.D.3d 744, 746 (2d Dep't 2016), the plaintiff and his coworkers removed a speaker from a wall in order to install wood paneling. After completing the job, the plaintiff was injured while attempting to rehang the speaker. *See id.* Although hanging a speaker is not, in itself, an enumerated act under section 240(1), the court held that it was ancillary to installing wood paneling on the wall, which is a protected activity. *See id.*

Like rehanging the speaker in *Goodwin*, Plaintiff argues that moving the shelving was ancillary to an activity protected under section 240(1). The shelving was moved to the top of an interior room at least partially to avoid obstructing the installation of the floating floor.[3]

---

[3] In his reply brief, Defendant asserts that "there is no indication" that the shelves were placed in storage to keep the floor clear for construction of the floating floor. *See* Dkt. No. 23-1 at 2. On the contrary, there is widespread agreement that clearing the floor was at least part of the

10

Therefore, Plaintiff argues, the task of moving the shelving was ancillary to the installation of the floor. The Court disagrees. While there was a relationship between the work being done on the floor and the location where the shelving was stored, the task of moving the shelving was not ancillary to the installation of the floor. Bringing a shelving unit from Newburgh to Marlboro was not "essential" to installing a floating plywood floor. And unlike the speaker in *Goodwin*, the shelving was not in place before the work began, and it was not returned to that same place when the work was complete. Instead, the shelving was brought into the warehouse and put in storage (where it stayed for several months) during the construction of the floor. The act of moving shelving into storage cannot be rendered ancillary to a construction project by the mere fact that the shelving was not set down in the middle of the work site.

Finally, Plaintiff cites to *Penaranda v. 4933 Realty, LLC*, 118 A.D.3d 596, 597 (1st Dep't 2014), to argue that his work was covered under section 240(1). In *Penaranda*, the plaintiff was injured when he fell off of a Bobcat machine that was being used to remove a piece of plywood from a construction site. *See id.* The court held that if "the plywood was being moved to clear the work site . . . [,] plaintiff was 'altering' the premises within the meaning of Labor Law § 240(1)." *Id.* While *Penaranda* may appear similar to the facts in this case, it is distinguishable in two important ways: the plaintiff in *Penaranda* was both employed in an enumerated act and performing duties ancillary to that act when he was injured. First, the plaintiff was employed by a construction company to move plywood and keep the construction site clear of debris. *Pernaranda v. 4933 Realty, LLC,* No. 100963/10, 2012 WL 4107454 (N.Y. Sup. Ct. Sept. 11,

---

reason that the shelving was stored on top of an interior room. *See* Dkt. No. 18-7 at 53:20-54:9; Dkt No. 18-8 at 31:12-31:18; Dkt. No. 20-3 at 26:2-26:9; *but see* 18-10 at 18:13-18:20. According to the President of Cigar Box, the shelving was also moved into storage in order to clear space on the floor to build a display for a customer. *See* Dkt. No. 18-7 at 53:20-54:9.

11

2012). Therefore, the plaintiff was part of a construction team that was engaged in an enumerated act—namely, building concrete curbs around the perimeter of a parking lot. *See id.* In this case, however, Plaintiff was not a part of the crew that was installing the floating floor. Second, clearing a work site of plywood and debris is a task that is ancillary to the construction work itself. But in this case, Plaintiff was not clearing the work site; he was merely moving an unrelated item through the work site.

*b. The Shelves*

Plaintiff provides a second reason that he was engaged in an activity covered under section 240(1) at the time of his injury: the act of moving the shelves was, in itself, an alteration of a structure. *See* Dkt. No. 20-2 at 5-6. Plaintiff argues that the shelving unit is a structure, and that Plaintiff was altering the shelving unit when he helped move it from Newburgh to Marloboro. *See id.*

For the purposes of section 240(1), the Court of Appeals has defined a "structure" as "any production or piece of work artificially built up or composed of parts joined together in some definite manner." *Joblon*, 91 N.Y.2d at 464 (quoting *Lewis-Moors v. Contel of N.Y.*, 78 N.Y.2d 942, 943 (1991)). To determine whether something is a structure, courts look to a number of factors, including its "size, purpose, design, composition, and degree of complexity; the ease or difficulty of its assembly and disassembly; the tools required to create it and dismantle it; the manner and degree of its interconnecting parts; and the amount of time the item is to exist." *McCoy v. Kirsch*, 99 A.D.3d 13, 17 (2d Dep't 2012).

In this case, the shelving unit consisted of interconnected steel arms that were each three to four feet long and weighed twenty-five to thirty-five pounds. *See* Dkt. No. 17-3 at ¶ 19. When assembled, the shelving unit was intended to hold large, heavy objects such as lumber and piping.

12

*See id.* at ¶ 20. New York courts have found similar shelving units to constitute structures. *See Phillips v. Powercrat Corp.*, 126 A.D.3d 590, 591 (1st Dep't 2015) ("The dismantling of the shelves was a sufficiently complex and difficult task to render the shelving a 'structure' within the meaning of Labor Law [section] 240(1)."); *Kharie v. S. Shore Record Mgmt., Inc.*, 118 A.D.3d 955, 956 (2d Dep't 2014) ("[T]he shelves at issue constituted a 'structure' under Labor Law § 240(1), as they were composed of component pieces (metal grates and cross bars) attached in a definite manner."). Therefore, the shelving unit likely fit within the Court of Appeals's definition of a structure.

But even if the shelves in this case were a structure, Plaintiff was not covered by section 240(1), which applies only to those injured while engaged in the "erection, demolition, altering, painting, cleaning or pointing of a building or structure." N.Y. Labor Law § 240(1). Plaintiff was moving pieces of the shelving unit when he was injured; he was not erecting, demolishing, altering, painting, cleaning, or pointing the shelving unit. Had Plaintiff been injured while disassembling the shelving unit, his injury would likely be covered under section 240(1). *See Phillips*, 126 A.D.3d at 591; *Kharie*, 188 A.D.3d at 955. But Plaintiff was only moving the disassembled pieces of shelving, and Plaintiff testified at his deposition that he cannot remember if he was even involved in taking apart the shelving system. *See* Dkt. No. 18-6 at 34:5.

### *2. Labor Law 241(6)*

New York Labor Law § 241(6) provides as follows:

> All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work . . . shall comply therewith.

13

"[T]he statute sets forth the common-law standard of care and mandates compliance with the Commissioner of Labor's rules, including any nondelegable duty imposed on owners and contractors set forth in those rules." *Morris v. Pavarini Const.*, 22 N.Y.3d 668, 673 (2014). To recover under section 241(6), a plaintiff must establish "that a specific regulation of the Industrial Code was violated, that the regulation applied to the incident at issue and that the violation proximately caused his injuries." *Hotaling v. Corning Inc.*, 12 A.D.3d 1064, 1065 (4th Dep't 2004).

In his motion for summary judgment, Defendant argues that Plaintiff's section 241(6) claim should be dismissed because Plaintiff was not involved construction, excavation, or demolition, as required by the statute. *See* Dkt. No. 18-12 at 9. Plaintiff responds that he was involved in construction, and he provides two different theories to support that claim, which are very similar to the theories Plaintiff asserts in support of his section 240(1) claim. First, Plaintiff argues that the installation of the floating floor constituted construction, and that by moving the shelving he was a part of that construction work. *See* Dkt. No. 20-2 at 12. Second, Plaintiff argues that the act of moving the shelving was, in itself, construction work. *See id.* at 14.

### a. The Floating Floor

As with Plaintiff's argument regarding section 240(1), the Court must address two different issues with respect to the floating floor. First, the Court must determine whether the installation of the floating floor qualifies as construction for the purposes of section 241(6). Second, even if the installation of the floor constituted construction, the Court must also determine whether there was a sufficient connection between that construction and Plaintiff's accident. First, the Industrial Code's definition of construction includes the "alteration . . . of buildings or other structures," 12 N.Y.C.R.R § 23–1.4(b)(13), and, as the Court notes above, the

installation of the floating floor likely met that standard, *see Joblon*, 91 N.Y.2d at 466 (finding that a plaintiff who engaged in "altering" under section 240(1) was therefore also engaged in construction for the purposes of section 241(6)).

As to the second issue, the Court finds that Plaintiff's task—moving shelving through the construction site and into storage—was not sufficiently related to the construction work to bring his injury within the scope of section 241(6). The purpose of section 241(6) is to protect workers engaged in construction work, but "[n]ot every employee lawfully on the property is necessarily affiliated with the construction work or is otherwise frequenting the premises within the meaning of Labor Law § 241(6)." *Yong Ju Kim v. Herbert Const. Co.*, 275 A.D.2d 709, 711 (2d Dep't 2000). As with section 240(1), courts analyze the relationship between a plaintiff's injury and the activity protected by section 241(6) by citing to *Prats*, which established that "the intent of the statute is to protect workers employed in the enumerated acts, even while performing duties ancillary to those acts." *See Prats*, 100 N.Y.2d at 882; *Rutkowski v. N.Y. Convention Ctr. Dev. Corp.*, 146 A.D.3d 686, 686 (1st Dep't 2017); *DeSimone v. City of New York*, 121 A.D.3d 420, 421 (1st Dep't 2014). Furthermore, courts often analyze claims under sections 240(1) and 241(6) together for the purposes of determining whether an injury is sufficiently connected to a protected activity. *E.g. Rutkowski*, 146 A.D.3d at 686; *Coombs v. Izzo Gen. Contr., Inc.*, 49 A.D.3d 468, 469 (1st Dep't 2007). Therefore, the Court's analysis of the relationship between Plaintiff's injury and the installation of the floating floor with respect to Plaintiff's section 240(1) claim also applies in the section 241(6) context.

### b. The Shelves

Plaintiff also argues that the act of moving the shelving constituted construction, irrespective of the floating floor installation. The Industrial Code defines construction as "[a]ll

15

work of the types performed in the construction, erection, alteration, repair, maintenance, painting or *moving* of buildings or other structures." 12 N.Y.C.R.R § 23–1.4(b)(13) (emphasis added). Notably, unlike in the section 240(1) context, moving a structure is a protected activity under section 241(6). Therefore, if Plaintiff was moving a structure, his injury would potentially be covered under section 241(6).

As the Court notes above, the shelving unit in this case likely fits the Court of Appeals's definition of a structure. *See Pino v. Robert Martin Co.*, 22 A.D.3d 549, 552 (2d Dep't 2005) (holding that large, metal shelves affixed to a building's interior wall were a structure for the purposes of section 241(6)). However, Plaintiff was not moving a shelving unit when he was injured; he was moving "steel arms" that could be assembled into a shelving unit. Plaintiff states that "the shelving, even if disassembled, constituted a structure," Dkt. No. 20-2 at 14, but he does not cite, nor was the Court able to locate, any authority to support that proposition.

The Court of Appeals defines a "structure" as "any production or piece of work artificially built up or composed of parts *joined together in some definite manner*." *Joblon*, 91 N.Y.2d at 464 (emphasis added) (quoting *Lewis-Moors*, 78 N.Y.2d at 943). Here, the steel arms that Plaintiff was moving were not joined together and, therefore, were not a structure. The Court would improperly enlarge the reach of the statute if it were to conclude that a plaintiff is engaged in construction any time he moves materials that could later be assembled into a structure. Moreover, such a conclusion is not supported by caselaw. For example, in *Pirog v. 5433 Preston Court, LLC*, 78 A.D.3d 676, 676-77 (2d Dep't 2010), the plaintiff was injured while moving pipes around a property used by his employer to store construction-related materials. Despite the fact that those pipes would presumably later be used in assembling a structure, the court found that the plaintiff was not engaged in construction withing the meaning of section 241(6). *See id.*

16

Plaintiff has failed to raise an issue of material fact as to his claims under sections 240(1) and 241(6). Therefore, Defendant's motion for summary judgment is granted and Plaintiffs motion for partial summary judgment is denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 18) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for partial summary judgment (Dkt. No. 17) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on both sides in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 12, 2017
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge